IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:25-CR-00145-M-1

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | ORDER |
| ELIHUE MARTIN MAHLER, | |
| Defendant. | |

This matter comes before the court following the court's conversation with Defendant at his *Faretta* hearing on March 17, 2026. DE 96. First, the court DENIED Defendant's Motion to Dismiss the indictment. DE 97. Then, following discussion with Defendant, the court ordered the appointment of new counsel, determined that the court would hold a "pre-representation conference" in this matter once replacement counsel enters their notice of appearance, and excluded all delays in calculating Defendant's speedy-trial time. Those directions are explained in greater detail below.

First, a brief overview of this case's history. On June 17, 2025, a federal grand jury charged Defendant in a five-count indictment with various charges related to his alleged sexual relations with Victim-1. DE 1. United States Magistrate Judge Robert B. Jones, Jr., scheduled Defendant's arraignment for September 9, 2025. DE 47. However, the court continued that arraignment and ordered Defendant committed for a psychological evaluation on July 30, 2025. DE 62. At a hearing on February 5, 2026, the court found Defendant competent to proceed to trial, allowed Defendant's counsel to withdraw, and scheduled a *Faretta* hearing. DE 90. Defendant chose not

to attend that hearing, and the court held him in contempt for his absence and continued the hearing for two weeks. DE 92.

The court held the rescheduled *Faretta* hearing on March 17, 2026. At the start of the hearing, Defendant handed a Motion to Dismiss to the court; that motion is now filed at DE 97. The Motion is DENIED. DE 97. As the court told Defendant at the hearing, "you are a human being; you are not a foreign sovereign." As such, neither the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602 *et seq.*, nor the United States District Court for the District of Columbia's Memorandum Opinion in *Owens v. Republic of Sudan*, 174 F. Supp. 3d 242, 247 (D.D.C. 2016), have any bearing on this case. The motion's allegation that the United States has failed to state a claim is procedurally inapposite; it seeks to apply the rules of civil procedure, *see* Fed. R. Civ. P. 12(b)(6), but "the Federal Rules of Civil Procedure do not apply in criminal cases," *cf. United States v. Bell*, 142 F. App'x 782, 783 (4th Cir. 2005) (affirming the district court's denial of an improper 12(b)(6) motion). Likewise, the motion's jurisdictional arguments are incorrect. "The district courts of the United States shall have original jurisdiction . . . of all offenses against the laws of the United States." 18 U.S.C. § 3231. So long as it alleges the essential elements of a crime charged, "a federal indictment . . . establishes the court's jurisdiction." *Cf. United States v. Hooker*, 841 F.2d 1225, 1232 (4th Cir. 1988). As the court explained at the hearing, "the Grand Jury Indictment constitutes an adequate charge against Defendant." Trans. at 7.

After denying Defendant's Motion to Dismiss, *see* above, the court proceeded to discuss with Defendant his desires regarding representation. Defendant informed the court he either had not read or did not understand the charges against him, so the court read those charges and discussed the possible penalties with Defendant. Defendant informed the court he did not understand the charges, the possible penalties, or the chance that he could face a consecutive

2

sentence, if found guilty. The court asked Defendant whether he knew of the advisory sentencing guidelines; Defendant responded that he did not. At that point, Defendant reiterated his desire to proceed with standby counsel. The court, in response, reminded Defendant that standby counsel did not mean Defendant would proceed with "hybrid representation where [Defendant] ha[s] a legal advisor and [Defendant] [is] running [his] case," instead, the court explained, proceeding *pro se*, even with standby counsel, would "isolate[] [Defendant] as the person upon whom all the responsibility falls." Trans. at 18–19.

Following a review of the applicability of the Federal Rules of Evidence, Federal Rules of Criminal Procedure, and the Federal criminal code, Defendant indicated he did not understand his duty to comply with those rules. Instead, Defendant told the court, "I know I operate *sui juris* and all this is not within the *sui juris* framing." Trans. at 21. The court confirmed, "that's correct; the *sui juris* does not apply to this courtroom," and continued to discuss how proceeding *pro se* would work. Trans at 21. Defendant indicated he was unfamiliar with the underlying criminal law and did not understand his obligation to act with a certain level of decorum. The court then discussed with Defendant some of the difficulties Defendant could face in keeping his discovery, given Defendant's incarcerated status, but confirmed Defendant would be able to see all *Brady* material—apparently one of Defendant's principal desires.

Following more discussion about standby counsel, Defendant confirmed he had been "surprised" to learn that standby counsel "would not be giving [him] legal advice," and that Defendant's understanding of standby counsel's role had "affected the way [he] would proceed in this case." Trans. at 26. Defendant reaffirmed, however, that he wanted to proceed *pro se* with standby counsel, explaining, "I don't need no one negotiating for me." Trans. at 27. The court then reiterated the limitations of standby counsel, reminded Defendant of the court's advice: "a

trained lawyer would defend you far better than you can defend yourself and it is probably unwise of you to try to represent yourself," and asked Defendant whether he intended to knowingly, intelligently, and voluntarily waive his right to counsel. Trans. at 27; *see Faretta v. California*, 422 U.S. 806 (1975). Defendant replied, "I know based on what I understand I reserve all my rights. I don't waive any of my rights." Trans. at 29.

In response, the court reminded Defendant that Defendant "ha[s] to voluntarily waive [his] right to counsel if [he] want[s] to proceed to represent [him]self," and confirmed that Defendant had two options: waiving the right to counsel or proceeding with appointed counsel. Trans. at 29. Defendant informed the court that he wanted counsel so long as his appointed counsel would not "do anything" without his consent. Trans. at 29. The court confirmed that Defendant's appointed counsel would act only with his consent as to decisions reserved for Defendant but reminded Defendant that any lawyer has certain ethical and legal obligations beyond Defendant's control. In light of Defendant's concerns, the court explained that it would schedule a hearing where Defendant, any appointed attorney, and the court could discuss and put on the record Defendant's "concerns about being a fully informed client and that no decisions are made regarding pleas, waivers of [his] rights, anything that constitutes the things that belong to a Defendant." Trans. at 30. Counsel for the government also asked the court to remind Defendant that, if he proceeded *pro se*, the United States would certainly offer him a plea deal but would not engage in any further plea negotiations. The court accepted that and so informed Defendant. Defendant confirmed that he wanted to proceed with appointed counsel to the court's proposed hearing.

Accordingly, the court deems Defendant's request to proceed *pro se* to be WITHDRAWN. The office of the Federal Public Defender is ORDERED to appoint Defendant with replacement counsel. Counsel for the United States and replacement counsel for Defendant shall confer and,

4

within one week of replacement counsel entering their notice of appearance, propose dates to the court's case manager for the aforementioned "pre-representation conference."

The court has determined that the ends of justice served by continuing this hearing outweigh the best interests of the public and Defendant in a speedy trial. Any delay occasioned by the continuance shall therefore be excluded in computing Defendant's speedy-trial time. *See* 18 U.S.C. § 3161(h)(7).

SO ORDERED this ___17th___ day of March, 2026.

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE